# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HELDER FLORES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL CASE NO.: 4:17-CV-3817** |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| **HARRIS, THOMAS LOYD, ANTON** | § | |
| **M. MAWHOOD, CITY OF** | § | |
| **HOUSTON, LA ESTANCIA** | § | |
| **APARTMENTS, 2012 MULTI-** | § | |
| **FAMILY REAL ESTATE FUND,** | § | |
| **LLC, Defendants** | § | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Plaintiff, Helder Flores, and files this complaint (third amended petition) this first complaint after service and responsive pleadings, against defendants, La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC, (Collectively "La Estancia Apartments"), City of Houston, Thomas L. Harris in his individual capacity, and Anton M. Mawhood in his individual capacity, and alleges as follows:

## INTRODUCTION

1. On July 22, 2015, Mr. Flores was a 24 year old father and businessman who was shot in by Houston Police Officer, Thomas Lloyd Harris. He was severely injured as a result of Thomas Lloyd Harris's actions of shooting Helder Flores in his back with a city owned tangled property namely the gun and bullet, and the delaying medical care while Helder Flores was in City of Houston's custody.

2. The Officer Defendants were off-duty officers, working 2012 Multi-Family Real Estate Fund, LLC, and La Estancia Apartments, an apartment complex, as security guards. Defendants claimed to have observed the plaintiff acting suspiciously, while holding a gun, so the two officers drove near the Plaintiff, officer Harris jumped out of the vehicle and shot the Plaintiff in the back

**NATURE OF THE CASE**

3. This is an illegal seizure, and delay in medical care Fourth Amendment of the United States Constitution claim, wrongful prosecution, and negligence, against Defendants, Mawhood, and Harris; Monell claim against the City of Houston; and, premises liability, negligent supervision, negligent training, negligent supervision and retention against La Estancia Apartment defendants. The action brought by the Plaintiff pursuant to 42 U. S. C. §1983, § 1985, § 1988, and Texas State Law.

4. Mr. Flores is seeking recovery and redress for violations of the constitutionally-protected civil rights from Defendants, Harris, Mawhood, and City of Houston.

Specifically, Plaintiffs allege that Defendants, Mawhood, Harris, and the City of Houston violated Helder Flores's civil rights pursuant to the Fourth Amendment and Fourteenth Amendment of the United States Constitution to be free from illegal search and seizure and cruel and unusual punishment, while under the custody and control of City of Houston, and defendant Harris and Mawhood the defendants encouraged the delay in medical care.

## PARTIES

5. Plaintiff, Helder Flores, is an individual, residing in Harris County, Texas whose mailing address is P.O. Box 27353, Houston TX 77227

3. Defendant, City of Houston, Texas, is a municipality located in Houston, Texas. The City of Houston is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. The City of Houston funds and operates the Houston Police Department, which along with Houston Mayor Sylvester Turner, the Houston City Manager, and the Houston City Council are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs as well as the acts and omissions, challenged by this suit. The City of Houston may be served with citation at 900 Bagby St. TX 77002,

4. Defendant, Thomas Loyd Harris, an individual sued in both his individual capacity and as an agent and employee of the City of Houston, was at all times relevant to

this action a security officer employed by La Estancia Apartments. Harris is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual capacity,

5. Defendant, Anton M. Mawhood, an individual sued in both his individual capacity and as an agent and employee of the City of Houston, was at all times relevant to this action a security officer employed by La Estancia Apartments. Harris is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual capacity

6. Defendant, La Estancia Apartments, owns the property located at the premises were the cause of action took place, and hired Defendants, Thomas Loyd Harris, and Anton Mawhood to perform security duties on or about July 22, 2015.

7. Defendant, 2012 Multi-Family Real Estate Fund, LLC sued under its assumed name La Estancia Apartments. owned the property located at the premises were the cause of action took place, and hired Defendants, Thomas Lloyd Harris, and Anton Mawhood to perform security duties on or about July 22, 2015.

## JURISDICTION

8. This court has jurisdiction over this action based on the amount in controversy, being more than ten thousand dollars, and the nature of the claim, and personal injury, and the cause of action occurred in Harris County Texas. This court has jurisdiction over Plaintiff's state law claims and supplemental jurisdiction over the

federal claims, under the Civil Rights Act of 1871 pursuant to 28 U.S.C. §§1331 and 28 U.S. C. §1343. Jurisdiction under Haywood v. Brown, 556 U.S. 729,731 (2009); Patsy v. Board of Regents of Florida, 457 U.S. 496, 506-07 (1982).

## VENUE

9. Venue of this suit lies in Harris County, Texas because all or a substantial part of the events or omissions giving rise to the claim occurred in the county of suit; and because defendants conduct business in the county of suit. *Tex. Civ. Prac. & Rem. Code* § 15.002(a)(1).

## FACTUAL ALLEGATIONS

10. On or about July 22, 2015, Helder Flores was a guest on the premises of La Estancia Apartments, temporarily staying with his mother who was a resident of the apartments.

11. That summer evening, defendant Thomas Loyd Harris, a member of the Houston Police Department assigned to the Westside Division on day shifts, employee number 136872 and Defendant, Anton M. Mawhood, also a member of the Houston Police Department, employee number 106925 were working a city-approved extra job at the La Estancia apartments located at 6200 Gulfton, Houston, Texas.

12. At approximately 6:40 PM, both Defendant officers were in Defendant Mawhood's personal unmarked vehicle, a 2005 Toyota Camry, driving around the parking lot

of the apartment complex. At that time Mr. Flores was walking through the apartment complex with friends, including witness, Daniel Antonio Vargas Negron. When the defendant officers came across the group they got out of their vehicles and engaged the group.

13. Despite the fact that Mr. Flores has never been a member of any gang, The Houston Police Department branded Mr. Flores as a member of the Southwest Cholos Gang (HPD Gang Tracker database #49095) because of Mr. Flores Mexican heritage, and was in Southwest Houston. Officer Harris then yelled "Hey, Hey, Hey!!" and then fired his duty weapon a Glock 22/.40 caliber semi-automatic handgun, serial number DWD259US, striking Mr. Flores in the back.

14. Mr. Negron saw a handgun slide out of Mr. Flores pants leg when Mr. Flores fell to the ground. After a delay in contacting emergency medical services, Mr. Flores was later transported to the hospital. While at the he lost consciousness, flat lined and had to be resuscitated. Mr. Flores next remembers waking up in the hospital believing that he was a victim of gang violence and that a gang member must have shot him. Mr. Flores was quickly advised that La Estancia Apartment's off duty Houston Police officer, Thomas A. Harris was responsible for shooting Mr. Flores.

15. Officers at the scene of the shooting interviewed Mr. Negron immediately after the shooting and registered him as a gang member after this incident, despite the fact that he had no criminal history, and was not engaged in any gang acivity.

16. August 11, 2015. Mr. Flores was charged with Aggravated Assault against a Public Servant in the 184th District Court. Judge Jan Kroeker Bond set at $100,000.00. On Wednesday, August 19, 2015, Mr. Flores was transferred from Memorial Herman Hospital and booked into the Harris County Jail, with the bullet from the shooting still lodged in his body.

17. Mr. Flores posted the $100,000 bond in addition to another bond in the amount of $70,000. In addition he hired three criminal defense lawyers at a cost of $40,000. Flores was required to appear on numerous docket settings, while he was out on bond. He could not commit to employment opportunities, afford adequate healthcare as a direct result of the acts of the Defendants Harris, and Mawhood.

18. On August 26, 2015, the results of an investigation conducted by D. R. McKinney, Assistant Chief Criminal Investigations Command; D. W. Ready, Captain Homicide Division; and R. J. Blain, Lieutenant Homicide Division attempted to justify the shooting of Mr. Flores.

19. The report, entitled, the "City of Houston Inter Office Correspondence," stated that Mr. Flores was "found to have one gunshot wound that entered his right shoulder and exited his upper right back." However, the investigation notes upon which this report is based contradict these findings because the notes indicate that Mr. Flores suffered "GSW to upper Left Area of Back." The bullet remains lodged in his

body, and there is no exit wound. No updated report reflected that Mr. Flores was shot in back.

20. On November 15, 2017, Mr. Flores pled guilty to a reduced charge, a misdemeanor of unlawful possession of a firearm.

**Allegations by of City of Houston Defendants in Criminal Case**

21. According to the defendant officers, as Mr. Flores was walking towards the front of the complex, he placed his right arm in a downward position behind his leg. Officer Harris alleged that he saw Mr. Flores holding a gun that was pointing towards the ground. Officer Harris told Officer Mawhood that he saw that the suspect had a gun.

22. Defendants, Harris and Mawhood were in Mawhood's personal unmarked vehicle, 2005 Camry. Officer Mawhood began driving his car closer to the three males. The three males continued to look towards the front of the complex and began trotting towards the street. The defendant officers stated that Mr. Flores then moved his hand from behind him and held the gun in a ready position near his chest with the gun pointing towards the street in the "ready position" holding a gun in his right hand.

23. Harris exited the vehicle, before Mawhood could stop the vehicle and claimed to announced himself as police and began giving verbal command to drop the gun and get on the ground. Mr. Flores turned towards the officers and pointed his gun

in his right hand directly at only Officer Harris, but also both officers, according to contradicting accounts. Harris was allegedly wearing his HPD issued uniform. Officer Harris fired his duty weapon three times. After the shots, Mr. Flores turned and ran but collapsed to the ground and dropped the gun.

24. Defendant, Harris proclaimed that Mr. Flores placed him in fear for life, and he was forced to shoot Mr. Flores, in his chest and shoulder area.

25. According to the Defendant officers, he was found to have one gunshot wound that entered his right shoulder and exited his upper right back.


**Policies, Practices and Culpable Conduct**

26. City of Houston Officers conduct in the use of excessive force, shooting a person in the back with a bullet, and delay in medical treatment, was a constitutional violation, since it was well-known in Harris County, Houston TX on July 22, 2017 that a person has the right to be free from use of excessive force and adequate medical care.

27. This case implicates the constitutional right to be free from illegal excessive force pursuant to the Texas Constitution and the 4th amendment to the U.S. Constitution. Further, Mr. Flores was denied adequate medical care in violation of the Texas Constitution and the 14th and 4th Amendments to the U.S. Constitution, since he was a pre-trial detainee.

28. The City of Houston through its officers failed to follow the policies, practices, and customs of City of Houston Police Department to deny and delay medical care. Such policies violate the constitutional rights of others and causing the risk of harm by refusing to administer medical services and delay in summoning emergency services after the injury is known.

29. In addition, the policies, practices and customs of the Houston Police Department violate the Texas and United States Constitutions.

30. By following such policies Defendants were deliberately indifferent to those seriously injured by the City of Houston's use of deadly force resulting in the serious medical needs of said individuals, including Mr. Flores.

31. Officers Harris, and Mawhood and The City of Houston were also deliberately indifferent to the serious medical needs of Helder Flores by failing to train officers in emergency medical first aid, and when it is necessary. The City of Houston implement policies, practices, customs and usages that adequately addressed the obvious and known safety risks to individuals injured at the hands of its officers.

32. The City of Houston failed to train officers of the likelihood that using deadly force causing serious injury short of death requires immediate first aid in the form of CPR or immediate summoning of emergency medical services and to acted with deliberate indifference to the serious medical need of those that The City of Houston's officer has caused serious injury, including Mr. Flores, when Mr. Flores

was left on the pavement then handcuffed after being shot in the back by HPD defendants, and officers Harris, and Mawhood failed to immediately contact emergency services.

33. Defendant Harris, and Mawhood and the city of Houston violations of Mr. Flores constitutional right to be free from legal search and seizure, cruel and unusual punishment and receive adequate medical care resulted from a policy, pattern, custom and practice of deliberate indifference to the serious medical needs of HPD shooting victims, and excessive force in that many never live after such an encounter with HPD after being shot.

34. The City of Houston trains its officers to place minorities accused of crimes from trespassing to murder into a database used to document Defendants as Gang members. Defendants placed Helder Flores and Daniel Negron into the Gangtracker database maintained by the city of Houston and distributed to other law enforcement agencies. Individuals placed in the Gangtracker database are completely unaware of said presence, they are not provided notice, they are not given an opportunity to be heard in violation of their due process. Many times, individuals like Helder Flores only become aware that they have been registered as a gang member when faced with criminal charges that often are accompanied with gang enhancements. Some who have never had contact with law enforcement, like the witness in the case Daniel Negron may not ever have notice of their status as a

registered gangmember. Both Helder Flores and Daniel Negron are Latino males, of Mexican and Puerto Rican descent respectively. The City of Houston has a policy to target and document male minorities in low income high crime areas as gang members without due process. There is a policy not to provide notice, nor have an opportunity to be heard. It is a secret database maintained by law enforcement, including the City of Houston that those documented often are unaware they are in the database until charged with a crime and the gang member status is use an enchancment. See City of Houston v Adams.

## G.     CLAIMS FOR RELIEF

35. Regarding all claims, City of Houston Waives Governmental immunity when a personal injury occurs as a result of a tortuous act that is not intentional, and involves the use of tangible city property, in this instance a City of Houston issued duty weapon, a Glock 22/.40 caliber semi-automatic handgun, number DWD259US, and bullet ammunition.

### Count 1 – Malicious Prosecution

36. Each of the preceding paragraphs are herein incorporated as if restated fully. The Harris County District Attorney's office commenced Assault of a Public Servant prosecution against the plaintiff, based on City of Houston, Harris and Mawhood's intentionally inaccurate and/or reckless disregarding of the truth inaccurate

statements. The statements were made without as much as reasonable suspension, and certainty not Probable cause to support such an allegation.

37. The named complaining witnesses, including The City of Houston, withheld information to the Harris County district attorney specifically that Mr. Flores was shot in his back, rather provided inaccurate information that he was shot in his chest/shoulder area with an exit would in his back.

38. Defendants, Harris, and Mawhood initiated the prosecution, by making additional false allegations stating that Helder Flores pointed a gun at them knowing that they were public servants.

39. The false statement supplied by the officers, Harris, Mawhood, and City of Houston established the probable cause for Mr. Flores's arrest for Aggravated Assault of a Public Servant. He was completely innocent of the Aggravated Assault of a Public Servant charges. There was no clear evidence that a crime has been committed and objective was to detain Mr. Flores, and send him to the Texas State Penitentiary.

40. As a result of the false statements made by City of Houston, and Police Officers, Mr. Flores had to hire attorneys, post a total of $170,000 in bond, lose time from work, suffer injury to his reputation, and forego necessary medical treatment.

## Count 2- Negligence

41. Each of the preceding Paragraphs in this petition are incorporated herein as if restated fully. At all times material, hereto, Defendants, La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC, (Collectively "La Estancia Apartments") were the owners, and/or possessors of the premises at Plaintiff entered defendants' premises as a guest, and temporary resident on July 22, 2015.

42. Defendants La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC, hired Defendants, Harris, and Mawhood as City of Houston Police Officers to secure the premises, and act as security officers.

43. Defendants, La Estancia Apartments had a duty to use ordinary care to ensure that the premises did not present a danger to plaintiff, as a guest. This duty includes duty to protect the Plaintiff, a duty to take whatever action is reasonably prudent to reduce or eliminate an unreasonable risk of harm which it has actual or constructive knowledge of, a duty to take whatever action is reasonably prudent to reduce or eliminate an unreasonable risk of harm created by its activity on the premises, duty to eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known.

44. An owner or occupier of land must use reasonable care to protect guest from known conditions that create an unreasonable risk of harm and conditions that should be discovered by the exercise of harm and conditions that should be

discovered by the exercise of reasonable care., the duty to train, and the duty to warn or to cure.

45. Because of the Plaintiff's status as a temporary tenant and guest, La Estancia Apartments owed him a duty to exercise ordinary care to provide adequate security on the premises.

46. La Estancia Apartments knew or should have known of the unreasonable risk posed to those on the premises while untrained Officers, Mawhood, and Harris remained on the premises since they were employed as an employee of La Estancia Apartments. The officers conduct on the date which made basis for this suit was foreseeable based its failure to train the officers on the recent but previous criminal conduct which occurred on and around the Apartments' property which included crimes similar to that Plaintiff was concerned about. La Estancia Apartments were aware of the criminal conduct because they hired the officers based on these concerns, but failed to properly train them to properly secure the premises relying solely on any possible law enforcement training. La Estancia Apartments had a duty to protect Mr. Flores but breached this duty.

47. La Estancia Apartments Defendants' conduct, and that of its agents, servants, and employees, acting within the scope of their employment, constituted a breach of the duty of ordinary care owed by La Estancia Apartments' to the Plaintiff La Estancia Apartments' knew or should have known that the condition on its

premises created an unreasonable risk of harm to invitees and guest because La Estancia Apartments' knew that the officer needed to be trained but failed to do so. As a result of the lack of adequate security, and La Estancia Apartments' actions, Helder Flores was injured by La Estancia Apartments' agents.

### Count 3-Vicarious Liability
### *(This Count is not asserted against the City of Houston, Defendant Harris, or Defendant Mawhood)*

48. Each of the Paragraphs in this petition is incorporated as if restated fully herein. At all times material hereto, Thomas L. Harris, and Anton M. Mawhood, were the employees of Defendants, La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC,. At the time of the occurrence Thomas L. Harris, and Anton M. Mawhood's actions were within the scope of his employment with La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC. Accordingly, Defendants, La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC, are vicariously liable for the acts of Thomas L. Harris, and Anton M. Mawhood, for the causes of action above.

49. Although, the officers were engaged in providing security at their employer's property, ejecting trespassers, enforcing rules and regulations promulgated by the employer La Estancia, La Estancia failed to give any instructions or directions to or properly train Defendants, Harris and Mawhood as to how to provide property security measures at the premises.

50. In committing the acts alleged in the preceding paragraphs, Defendants Harris and Mawhood acted at all relevant times within the scope of his employment with La Estancia Apartments. La Estancia Apartments, as principal, is liable for all torts committed by its agent in the scope of his employment, including those of Defendants Harris and Mawhood.

### Count 4-Premises Liability of La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC(*This Count is not asserted against the City of Houston, Defendant Harris, or Defendant Mawhood).*

51. Each of the Paragraphs in this petition is incorporated as if restated fully herein. La Estancia Apartments, 2012 Multi-Family Real Estate Fund, had control over the premises in question that Defendants owed certain duties to Mr. Flores, the breach of which proximately caused the injuries set forth herein.

52. Defendants, La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC, owed Plaintiff the duty to provide a safe environment, free of any potential for a reckless conduct resulting in bodily injury. This includes the duty to protect Plaintiff from unreasonable risks of harm or to warn him of the risks so that he may avoid them, and they duty not to injure him willfully Wantonly, or through gross negligence.

53. Defendants La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC, Defendants' agents, servants, and employees negligently permitted

aggressive conduct by employees to occur on their premises and created an unreasonable risk of harm to their invitees.

54. Plaintiffs would further show the court that the unreasonably dangerous condition existed, in allowing the untrained security officers to patrol and remain in the premises without adequate supervision.

### Count 5-Defendants, La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC, Negligent Hiring, Training, Supervision, and Retention (*This Count is not asserted against the City of Houston, Defendant Harris, or Defendant Mawhood).*

55. Each of the Paragraphs in this petition is incorporated as if restated fully herein. La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC,  had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under as the facts described herein.

56. Plaintiff's injuries were proximately caused by La Estancia Apartment Defendants' negligence, carelessness and reckless disregard of said duty and were negligent in failing to use ordinary care in hiring, supervising, training and retaining employees.

57. The negligent, careless and reckless disregard of duty of Defendants, 2012 Multi-Family Real Estate Fund, LLC, and La Estancia of at minimum failing to use reasonable care in hiring employees, ordinary care in supervising its employees, reasonable care in retaining its employees, and reasonable care in training its

employees, jointly and severally, separately and collectively was the proximate cause of Plaintiff's injuries and damages.

## Count 6–Negligence of Defendant, Thomas Loyd Harris

58. Each of the Paragraphs in this petition is incorporated as if restated fully herein. In the alternative to the constitutional claims, Plaintiff brings his negligence claim against Defendant, Thomas Harris.  That on the occasion in question, Defendant, Thomas L. Harris, was guilty of numerous deliberate indifferent acts and/or omissions of negligence including, but not limited to the following:

59. Failing to prevent injury to others when it reasonably appeared or should have appeared that in the exercise of his lawful rights others may be injured by a dangerous condition that was created by him. he failed to exercise reasonable care to avoid a foreseeable risk of injury to Mr. Flores, take affirmative action to control or avoid increasing the danger from a condition that had been at least partially created by his conduct, or use ordinary care in aiding or protecting others from peril when the peril was under his control.

60. All of the foregoing acts and/or omissions, jointly and severally, separately and collectively are the proximate cause of Plaintiff's injuries and damages.

61. In the event The City of Houston files a Motion to Dismiss state claims against Thomas L Harris, City of Houston waives immunity when a personal injury occurs

as a result of a deliberately indifferent tortuous act that and involves the use of tangible city property, in this instance a bullet.

## Count 7- Negligence of Defendant, Anton Mawhood

62. Each of the Paragraphs in this petition is incorporated as if restated fully herein. In the alternative to the constitutional claims Plaintiff brigs his negligence claim against Defendant, Thomas Harris. That on the occasion in question, Defendant, Anton Mawhood, was guilty of numerous deliberate indifferent acts and/ or omissions of at minimum negligence including, but not limited to the following:

63. Failing to prevent injury to others when it reasonably appeared or should have appeared that in the exercise of his lawful rights others may be injured by a dangerous condition that was created by him. he failed to exercise reasonable care to avoid a foreseeable risk of injury to others, take affirmative action to control or avoid increasing the danger from a condition that had been at least partially created by his conduct, or use ordinary care in aiding or protecting others from peril when the peril was under his control.

64. In the event The City of Houston files a Motion to Dismiss claims against Anton Mawhood, City of Houston Waives immunity when a personal injury occurs as a result of a tortuous act that is deliberately indifferent, not intentional, and involves the use of tangible city property, in this instance a bullet.

**Count 8- Intentional Infliction of Emotional Distress (*This Count is not asserted against the City of Houston*).**

65. Each of the Paragraphs in this petition is incorporated as if restated fully herein. In the alternative to the constitutional claims and to the other counts, Mr. Flores suffered emotional distress as a result of the La Estancia Apartments defendants', Harris and Mawhood and it agents' actions.

**Count 9 – Texas Constitution- Texas Constitutions Article I, Section 19**
***This Count is not asserted against La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC.***

66. Each of the Paragraphs in this petition is incorporated as if restated fully herein. Under, Texas Constitutions Article I, Section 19, Deprivation of Life, Liberty, Etc. due course of law. No citizen of this State shall be deprived of life, liberty, property privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Mr. Flores posed no threat of danger to Officer Harris or Mawhood. Helder Flores was deprived of life, and liberty by the gunshot inflicted upon him by Officer Harris without justification, unreasonably and with excessive force.

**Federal Constitutional Violations (This Count is not asserted against the La Estancia Apartments, 2012 Multi-Family Real Estate Fund, LLC).**

67. Each of the Paragraphs in this petition is incorporated as if restated fully herein. As described in the preceding paragraphs, Defendants, Harris Mawhood, and City of Houston actions toward Mr. Flores violated his constitutional rights, 42 USC 1983, under the fourteenth and fourth amendment to be from illegal search and seizure, excessive force, equal Protection, after being wrongfully incarcerated. He had to hire three different attorneys to defend against the baseless charges brought by Defendants, Thomas, Mawhood, and City of Houston.

68. City of Houston Police Department officers, Thomas L. Harris, and Anton M. Mawhood, were engaged in protecting Defendant, La Estancia Apartments, property ejecting trespassers, and enforcing rules and regulations promulgated by Defendants, La Estancia Apartments, and 2012 Multi-Family Real Estate Fund, LLC.

69. The City of Houston waives immunity when the negligence of its officers in the use of the city of Houston's tangible property, city issued duty weapon and ammunition, a bullet that caused Mr. Flores injury and to lose one of his lungs.

**Count 10- 42 U.S.C. § 1983 Excessive Deadly Force**

70. As described in the preceding paragraphs, Defendant Harris's actions toward Helder Flores violated his constitutional rights, under the Fourth and Fourteenth Amendments of the United States Constitution, including but not limited to the misconduct described in this Count was objectively unreasonable and undertaken

with deliberate indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

71. Defendants have waived sovereign immunity because the officers' actions were not objectively reasonable. In shooting Mr. Flores, failing to render medical treatment, and delaying in summoning emergency responding medical personnel, Defendants violated clearly established constitutional rights of Mr. Flores. A reasonable officer would have known that shooting Mr. Flores in the back violates his constitutional right to be free from unreasonable seizure. The Defendants' action were not objectively reasonable because the officers shot a man in the back who did not pose a significant threat of death or serious physical injury to the defendants or others.

## Count 11- 42 U.S.C. § 1983 Equal Protection

72. Each of the Paragraphs in this petition is incorporated as if restated fully herein. Defendants, Harris Mawhood, and City of Houston violated Plaintiff's constitutional rights by subjecting him to unlawful, unequal treatment on the basis of his race in violation of the Fourth and Fourteenth Amendment of United States Constitution. Defendants, Harris Mawhood, and City of Houston conduct created discriminatory effect by targeting Mr. Flores for police action based on his race. He was placed in the Defendant, City of Houston's Gangtracker Database without

due process of law based solely on his race. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with deliberate indifference to Mr. Flores's constitutional rights.

73. Defendants have waived sovereign immunity because the officers' actions were not objectively reasonable. In shooting Mr. Flores, failing to render medical treatment, and delaying in summoning emergency responding medical personnel, Defendants violated clearly established constitutional rights of Mr. Flores. A reasonable officer would have known that shooting Mr. Flores in the back violates his constitutional right to be free from unreasonable seizure. The Defendants' action were not objectively reasonable because the officers shot a man in the back who did not pose "a significant threat of death or serious physical injury to the defendants or others.

## Count 12- 42 U.S.C. § 1983 Failure to Provide Medical Care, Delay in Medical Care

74. Each of the Paragraphs in this petition is incorporated as if restated fully herein. Defendants, City of Houston, Harris, and Mawhood's actions toward Helder Flores violated Helder Flores's constitutional rights, including but not limited to the Fourth and Fourteenth Amendments of the United States Constitution due to his failure to render any medical care to Helder Flores after having detained him, pre-trial, after shooting him in the back, and delayed in summoning emergency

services of Plaintiff suffered life threatening injuries, by leaving him injured and handcuffed on the hot pavement.

75. Further, Defendants have waived sovereign immunity because its policy was the moving force of its officers' actions which were not objectively reasonable. In shooting Mr. Flores, failing to render medical treatment, and delaying in summoning emergency responding medical personnel for more than 20 minutes after Helder Flores as wounded. Defendants violated clearly established constitutional rights of Mr. Flores. A reasonable officer would have known that shooting Mr. Flores in the back violates his constitutional right to be free from unreasonable seizure, a right well known by defendants on the date of the claim accrued. The Defendants' actions were not objectively reasonable because the officers shot a man in the back who did not pose "a significant threat of death or serious physical injury to the officers or others

76. The misconduct described in this Count was objectively unreasonable and with deliberate indifference to Helder Flores's constitutional rights.

### Count 13 -Monell Claims- Policy, Practices, Custom and Procedure Ratification, and or adoption

77. Each of the Paragraphs in this petition is incorporated as if restated fully herein. As result of City of Houston customs, policies, and practices it encourages the above constitutional violations, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, control and discipline

its officers, including Harris and Mawhood such that its failure to do so manifests deliberate indifference by such officers.

78. As a matter of custom, policy and practice, the City of Houston facilitates the very type of misconduct at by failing to adequately investigate, punish, train, and discipline prior instances of similar misconduct, thereby leading Houston police officers to believe their actions will never be meaningfully scrutinized.

79. The City of Houston encourages future uses of excessive deadly force; unlawful detentions; failures to intervene; the delay of medical care, in handcuffing critically injured individuals and failing to immediately preform CPR, failing to immediately summing emergency medical care, after causing life threatening injuries; and race-based policing such as those Plaintiff complains of.

80. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Houston Police Department violate the constitutional rights of individuals in a manner similar to that alleged by Helder Flores, herein, on a regular basis, yet the Houston Police Department investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

81. As a result of the City of Houston's policies and practices, and the unjustified and unreasonable conduct of the Defendant Harris, and Mawhood, Plaintiff has suffered physical injuries, mental anguish, and severe emotional distress.

82. The misconduct by the defendants described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

83. Over FOUR HUNDRED (400) HPD officers have been involved in the killing or wounding of civilians since January 1, 2004 yet only one HPD officer, Jason Loosmore[1], has been indicted when HPD Homicide Division's collected evidence and conclusions were presented to a Harris County Grand Jury.

84. Furthermore, there is no evidence that since January 1, 2004 a single HPD officer, including Loosmore, has been disciplined for a City policy violation due to shooting a civilian after the HPD Internal Affairs Department investigation into the shooting. About 25% of these shootings involved citizens with no weapons.

85. In December, 2016 new Houston Police Chief Acevedo stated he was creating a special HPD unit apart from homicide to investigate situations such as shootings of civilians.

86. On October 1, 1998, HPD Officers Anthony M. Ruggeroli and Brian T. Mitchel shot at suspects in a stopped car when they did nothing more than not respond immediately to verbal commands. Officer Ruggeroli merely shouted a few

---

[1] Harris County grand jury has indicted a former Houston police officer for an off-duty incident in 2016 where he shot and wounded a neighbor following an argument over a dog, the DA's office announced. Jason Loosmore, 32, is charged with aggravated assault with a deadly weapon.

commands then left cover and went to the passenger window and shot at the unarmed driver. Officer Mitchel than ran up to the passenger window and smashed it and grabbed the passenger. The officers were not disciplined for using excessive force nor retrained in use of force or the proper high risk vehicle approach tactics, indicating ratification and acceptance of patterns, practices, customs and/or procedures of the excessive use of force.

87. In 1999, HPD Sgt. Glover's gun went off and struck a suspect when he used it to bash in passenger side window. Officer Shockley then discharged his weapon striking the other suspect in the vehicle. Despite using excessive force on both suspects and failure to use safe high risk vehicle approaches and full IAD investigation, there was no discipline or retraining as a result of this incident, indicating ratification and acceptance of HPD's excessive use of force and dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, and customs.

88. In 1999, Jason Arboleda was shot and killed by HPD Officer R. A. Williams. Jason had left a bar with his friend Franky Aguirre, who was a passenger. On the way out from the area he struck, but did not seriously injure, Officer R. A. Williams. Officer Williams then chased after Mr. Arboleda on foot and stopped him at a traffic light as Jason tried to flee in his vehicle. Officer Williams ordered Mr. Arboleda out of the car and on to the ground to which Mr. Arboleda complied. At

that point, Officer Williams did not handcuff or otherwise secure Mr. Arboleda, who then jumped back in his car. The officer ran to the front of the car instead of obtaining cover. As Mr. Arboleda drove forward, Officer Williams shot and killed Jason.      Officer Williams was not hit by the car and even felt safe enough to shoot rather to spend time getting out of the way. Despite IAD investigation, Officer Williams was not disciplined or retrained in the use of excessive force or high risk vehicle approach. The City determined it was a justified shooting and it never addressed Officer Williams' failure to follow either the written HRVA policy or any safe HRVA method. Further, the City did not order any training, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures and use of force.

89. In 2000, HPD Officer R. C. Headley stopped a vehicle and determined it was stolen. Officer Headley then shot Mr. Langston (driver) and Mr. Plumbar (passenger) when there was no reason to do so. Neither person was armed. Despite IAD investigation, there was no discipline nor training ordered.

90. In 2000, Officer Selvyn J. Ellis, who had 47 sustained complaints against him, received a suspension instead of firing, despite the fact he refused to answer questions during an IAD inquiry into improper conduct, including allegations of

assault. He had previously been suspended for injuring a bar patron while working an extra job and not reporting the use of force.

91. In 2002, Officer Ted A. Adams, who has 41 sustained complaints against him, received a one day suspension instead of firing for not reporting the use of force after injuring a female after knocking her to the pavement with a leg sweep.

92. In 2003, Houston Police Lieutenant Hillman was involved in a faulty high-risk vehicle approach and used excessive force against unarmed Kevin Lunsford. When Hillman got near Lunsford he claimed that Lunsford moved and then Lt. Hillman shot and killed Lunsford. Despite IAD investigation, there was no discipline for excessive use of force or any training required.

93. On October 31, 2003, HPD Officer Butler was working at a large AMC movie theater in west Houston when 15 year old Jose Vargas was purportedly playing his radio too loud in his vehicle on his way to see a movie with his three teenage friends. Officer Butler went to investigate and the kids left. Officer Butler claimed the kids did not obey his commands to stop so Butler then gave pursuit. Vargas was scared and drove off.

94. Officer Butler rushed up to the vehicle on foot when it was stopped in traffic with his gun drawn and not under any cover. This startled the 15 year old unarmed Vargas and the vehicle lurched forward with Officer Butler at the side of the driver's window. Officer Butler then shot and killed Vargas. Vargas had no

criminal history. Despite the obvious excessive use of force and IAD investigation, Officer Butler was not disciplined nor retrained in the use of force.

95. In 2003, Mr. Juan Lozano was killed because HPD Officer R. L. Plotner used faulty high risk vehicle approach techniques by approaching a vehicle and failing to get under cover and give verbal commands to Lozano in a vehicle after a pursuit. Without being in fear of his life or serious bodily injury, Plotner shot and killed Juan. This officer was not disciplined or retrained in proper high risk vehicle approach tactics nor excessive use of force, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures similar to those that killed Roland.

96. In 2003, HPD Officer Rivera made a stop of a felony suspect in a van. Instead of gaining cover and shouting verbal commands, Officer Rivera left cover and approached the van exposed. Officer Rivera shot the van driver when he was not frightened for his life. Officer River, however, should have maintained cover and a position of advantage. Officer Rivera was not disciplined or retrained for use of excessive force despite IAD investigation.

97. In 2004, HPD Officer C. Pena Jr. shot and seriously wounded an unarmed 16 year-old girl who was under a vehicle. Officer Pena gave verbal commands to LaDonna Banks and then shot her. Officer Pena received no discipline and no

training in gaining cover when dealing with suspects and his use of excessive force.

98. In 2005 HPD Officer Thompson used faulty high-risk vehicle approach techniques and excessive force resulting in the shooting of an unarmed suspect, Timothy M. Thomas, who was driving when Officer Thompson pulled him over. Officer Thompson became suspicious because the driver was black and he had heard of a black felony burglary suspect. At first, Officer Thompson was behind cover and using his bullhorn. This only lasted a few minutes and then the officer left his cover and approached the vehicle with his gun drawn. Mr. Thomas started to get out of the car and when he did, he was shot by Officer Thompson who said he was in fear of his life due to Mr. Thomas' innocent movements. Thomas had no gun. Officer Thompson obviously used excessive force and faulty high risk vehicle approach. Officer Thompson was not disciplined and there was no training despite a full HPD IAD investigation.

99. August 14, 2007, a 17 year old unarmed girl was seriously wounded because of faulty high risk vehicle approach. Brittanee King, 17, was a littering suspect who had fled in a car for a short distance and was pursued by HPD Officer Carraway approached her with gun drawn. When Brittanee stopped the vehicle to comply with the officer, Officer Carraway failed to use safe HRVA methods and left cover and exposed himself in full view of the young unarmed girl in the car. When the

unarmed Brittanee made an innocent movement, Officer Carraway claimed he feared for his life because he was not behind cover and in a position of advantage and shot Brittanee, wounding her. Officer Carraway claimed he saw a shiny object--Brittanee  was wearing shiny bracelets. Despite the admission of unsafe HRVA approach methods and use of excessive force, no discipline or training was administered despite an IAD investigation

100.     In 2008 Charles Chukwu was arrested and taken to the City of Houston jail at Mykawa Road where he was beaten by at least one City of Houston jailer without any reason. After the beating, Mr. Chukwu was purposefully released before he could get the names of the jail inmate witnesses. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Chukwu, nor did the Houston jailers report another Houston jailer for the obvious excessive force. The jailers refused to take Mr. Chukwu to the jail clinic or hospital where the injuries could be documented, despite the excessive use of force and obvious injures.

101.     The Chukwu incident was caught on videotape and investigated by the Houston IAD. It failed to find any violation when, in fact, excessive force had been used against Mr. Chukwu. Mr. Chukwu asked for the videotape from former City Mayor Bill White, Houston City Council and the HPD IAD, but was refused. At a Houston City Council meeting, Councilman Adrian Garcia stated that the

videotape should be released. City Council member Sue Lovell asked the HPD IAD about the Chukwu jail beating video, however, she apparently never received a copy of the Chukwu video. More than two years after the alleged beating, Mr. Chukwu has not received the beating videotape.

102.     On June 22, 2008, Henry Lee Madge was struck several times while in handcuffs by a Houston police officer without justification and the officer was not disciplined.

103.     Around February 6, 2009, Trenton Garrett was arrested and taken to the Houston jail at Mykawa Road where City of Houston jailers beat him without any reason. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Garrett, nor did the Houston jailers report another Houston jailer for the obvious excessive force. The jailers refused to take Mr. Garrett to a hospital where the injuries could be documented despite the excessive use of force and obvious injures. The incident was caught on videotape and investigated by the Houston IAD which failed to find any violation, when in fact, excessive force had been used against Mr. Garrett. Mr. Garrett asked for the videotape from the HPD IAD but was refused. More than two years after the alleged beating, Mr. Garrett has not received the beating videotape.

104.     On August 5, 2009, Hatice Cullingford, Ph.D. ("Dr. Cullingford"), 65, was arrested by the Houston Police Department. Dr. Cullingford had never been

convicted of any crime in her life and never previously been arrested for any crime. At the City of Houston Mykawa jail, Houston jail employees used excessive force on Dr. Cullingford yet no discipline resulted.

105.     In the late Spring of 2010, 15 year old Chad Holley was purposefully struck by a Houston police squad car and then violently beaten--by kicking, stomping and punching in the head, groin and other parts of his body--by least four Houston police officers while other Houston police officers looked on without intervention. Chad Holley was not resisting but had laid down on the ground with his hands behind his back. No officer attempted to stop the beating by the other officers and after the beating no officer reported any other officer for the incident. No use of force report was filled out by any officer in a timely manner. The Mayor of Houston, Annise Parker, thereafter, would not allow the release of a videotape showing the incident to the public.

106.     In February, 2011, a videotape of the Chad Holley beating was released to local Houston television station KTRK, Channel 13, by a Houston citizen. Houston City Mayor Annise Parker then threatened the citizen and berated KTRK Channel 13: "Whoever provided the video to Channel 13 is in violation of a federal court order and should be prosecuted." The citizen was not a party to the lawsuit nor was any protective order directed at the citizen.

107. On February 8, 2011, at a Houston City Council public meeting discussing the Chad Holley excessive force incident and past police excessive force incidents, Houston City Attorney David Feldman interrupted Houston City Councilpersons, such as Melissa Noriega, who were talking about the videotape of Holley and past instances of police brutality that could affect city liability. Mr. Feldman then instructed the City council to not to talk about the Chad Holley case. This was a sentiment Mayor Parker also verbalized. Council member Noriega agreed and stopped talking about excessive force events as did the Mayor and other City Councilpersons. For the past twenty years there have been excessive force cases against the City pending at all times, so under this policy the council members cannot speak about excessive force cases in public meeting.

108. The following individuals were assaulted and injured by Houston police and or Houston jailers the events of which were caught on video and then viewed by the Houston employee's supervisor and no discipline or retraining was meted out. In each instant there was no need to apply the level of force used by the City of Houston employees:

109. February 17, 2007: Steven Mikeasley

110. June 5, 2007 and/or March 5, 1997: Brian Golott

111. September 23, 2007: IAD Case #30470-2007 November 19, 2007:Hasan Matthews

112.    January 27, 2008: Samuel Smith

113.    April 4, 2008: Alexandra Koch[2]*

114.    May 26, 2008: Kenneth Cert*

115.    June 5, 2008: Nakia Stark*

116.    June 21, 2008: Jeffrey Clark

117.    July 26, 2008: Clyde Jones

118.    September 30, 2008: Furrell Holmes

119.    October 18, 2008: IAD Case #2302-2338

120.    December 28, 2008: Brian Udovich

121.    January 17, 2009:  Timothy Peavy

122.    April 12, 2009: Oliver Nicholas

123.    August 23, 2009: IAD Case # 35015-2009 December 12, 2009: Eric Cossie

124.    February 13, 2010: David Compean

125.    March 3, 2010: Cooper, IAD Case #36327-2010

126.    May 3, 2010: David Luke

127.    August 12, 2010: W. Cotley

128.    August 15, 2010: Harrison

129.    March 16, 2011: Lewis Henderson

130.    April 27, 2011: Donald Brooks

---

[2] * Spelling may be inaccurate

131.     June 24, 2011: Charles Perez

132.     October 24, 2011: Pedro Barrero

133.     Jan. 16, 2014:  Juventino Castro

134.     October 2011: Jason Rosemon

135.     July 9 2012: Jillian McGowan

## H. DEFENDANTS WAIVER OF SOVEREIGN IMMUNITY

136.     Each of the Paragraphs in this petition is incorporated as if restated fully

herein. Defendants have waiver qualified and sovereign immunity regarding each

and every Count against the government and its actors in this complaint because

the defendant officers' actions were not objectively reasonable. In shooting Mr.

Flores, failing to render medical treatment, and delaying in medical treatment by

failing to take any life saving measures and delaying in summoning emergency

responding medical personnel, Defendants violated clearly established

constitutional rights of Mr. Flores. A reasonable officer would have known that

shooting Mr. Flores in the back violates his constitutional right to be free from

unreasonable seizure. The Defendants' action were not objectively reasonable

because the officers shot a man in the back who did not pose a significant threat of

death or serious physical injury to the officers or others. The Defendant officers

under the color of law pursuant to a policy, custom and practice set forth by the

City of Houston to delay medical care after causing an individuals injury and placing the individual in the custody of the City of Houston.

## I. DAMAGES

**Declaratory Relief- Removal from the HPD Gang Tracker database**

87. Each of the Paragraphs in this petition is incorporated as if restated fully herein. Helder Flores is a business owner, a business that is flourishing and should not be jeopardized due to him being denied contracts and bid opportunities, because Helder Flores was placed in the HPD Gang Tracker database. He was placed on in the database in a direct retaliation effort to prejudice the finder of fact as it relates to his allege crime of Aggravated Assault of a Public Servant, and any future proceedings. He was not placed in the database until after this incident occurred, and without a basis for doing so. The Removal is necessary so that it does not prejudice him in this proceeding or any further proceedings.

88. In addition, equitable relief, including, without limitation, that each defendant be made to apologize and City of Houston to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

89. As a direct and proximate result of the current allegation made the base of the lawsuit plaintiff has incurred the following damages:

90. Past and Future medical care and expenses, from each defendant jointly and severally.

91. Past and Future physical pain and suffering, from each defendant jointly and severally.

92. Past and Future Physical impairment, from each defendant jointly and severally.

93. Attorney fees and costs under 42 U. S. C. 1983 and 1988 including reasonable and necessary, from each defendant jointly and severally.

94. Direct damages from each defendant jointly and severally.

95. Equitable relief, including, without limitation, that City of Houston-Police Department, Officers Mawhood, and Harris be made to apologize and City of Houston to promulgate, adopt, train, maintain and enforce appropriate policies to prevent future instances of the type of misconduct described herein; Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

96. Exemplary damages, Plaintiff's injury resulted from defendants, La Estancia Apartments, Harris, and Mawhood's gross negligence, which entitles plaintiff to exemplary damages under Texas Remedies Code section 41.003(a).

97. Damages for mental anguish, disfigurement, and other pecuniary losses.

98. In addition, Plaintiff seeks:

a.  Prejudgment Interest

b.  Court costs; and

c.  All other relief to which plaintiff is entitled.

99. Exemplary damages. Plaintiff's injury resulted from defendants, La Estancia Apartments, Harris, and Mawhood's gross negligence, which entitles plaintiff to exemplary damages under Texas Remedies Code section 41.003(a).

100.    As a direct and proximate result of the current allegation Defendants' Negligence, Constitutional Violations, Wrongful Prosecution, Negligent Hiring, Training, Supervision, and Retention and Intentional Infliction of Emotional Distress caused injury to plaintiff, plaintiff has incurred the following damages:

a.  Past and Future medical care and expenses.

b.  Past and Future physical pain and suffering,

c.  Past and Future Physical impairment

d.  Attorney fees, expert fees, and costs under 42 U.S. C. 1983 and 1988 including reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs

e.  Direct damages

f.  Prejudgment Interest

g.  Mental anguish,

h.  Disfigurement,

i. Physical impairment,

Exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a), and applicable federal statute based on evidence that the defendants acted with malice, gross negligence, defendants and agents acted with an extreme degree of risk of injury towards the plaintiff, despite the awareness of the risk and proceeded with deliberate indifference when, the defendant, Harris unjustifiably shot Plaintiff in the back, Past and Future loss income, wages, or earning capacity and other pecuniary losses.

## J. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Helder Flores, respectfully prays that Defendants, be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiff and against each Defendants, both jointly and severally, for all damages requested herein, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity. Punish each individual Defendant, and deter others from engaging in similar conduct; Plaintiffs assert that the severe injuries, pain suffering, physical impairment, and harm was the result of Helder Flores suffered was the result of government actors conduct, individually, and collectively, motivated by ill intent, done recklessly or with callous deliberate

indifference to the federally protected rights of Helder Flores, and hereby entitle

Plaintiffs to punitive and exemplary damages.

Equitable relief, including, without limitation, that City of Houston, and

Officers Harris and Mawhood be made to apologize and to promulgate, adopt,

train, maintain and enforce appropriate policies to prevent future instances of the

type of misconduct described herein; Such other relief, including injunctive and/or

declaratory relief, as the court may deem proper.

Respectfully submitted,
By:/s _/U.A. Lewis_
The Lewis Law Group
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. BOX 27353
HOUSTON, TX 77227
PHONE: (713) 570-6555
FAX: (713) 581-1017
MYATTORNEYATLAW@GMAIL.COM
ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on January 29, 2018, a copy of foregoing was served via CM/ECF

system to each counsel of record.


 /s/   U.A. Lewis

U.A. Lewis