IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELDER FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3817 |
| | § | |
| THOMAS LOYD HARRIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In July 2015, an off-duty Houston Police Officer, Thomas Harris, shot Helder Flores at an apartment complex in Houston. Flores sued Officer Harris, another officer on the scene that night, Officer Anton Mawhood, and the City of Houston.[1] (Docket Entry Nos. 1-1, 6, 78). The officers and the City separately moved for summary judgment, and Flores filed identical responses to both motions. (*See* Docket Entry No. 112, 113). The court granted summary judgment for the City and the Officer Mawhood but denied summary judgment as to Flores's excessive-force claims against Harris. (Docket Entry No. 129). Flores now moves for reconsideration of the court's March 2019 Memorandum and Order granting summary judgment to the City. (Docket Entry No. 150). The City responded and filed objections to Flores's exhibits, and Flores replied. (Docket Entry Nos. 156, 161, 162).

---

[1] Flores also sued La Estancia Apartments and the 2012 Multi-Family Real Estate Fund, LLC, but those parties reached a settlement agreement before the court ruled on the summary judgment motions. Those parties have been dismissed from this litigation. (*See* Docket Entry No. 126).

Based on the motion, response, and reply; the applicable law; and the relevant record, the Court denies Flores's motion for reconsideration. (Docket Entry No. 150). The reasons for this ruling are detailed below.

I. **Background**

Flores alleged that in July 2015, Officer Harris shot him in the back at La Estancia Apartments in Houston. (Docket Entry No. 78). Flores sued Officers Harris and Mawhood and the City of Houston, bringing claims under 42 U.S.C § 1983 for alleged violations of the Fourth and Fourteenth Amendments. He alleged that the City violated his constitutional rights by: failing to adequately investigate the shooting, punish Officers Harris or Mawhood, or train and discipline its officers who use deadly force; discriminating against him based on his race; denying him timely medical care; and ratifying Harris's alleged misconduct. (*Id.* at ¶¶ 318–69).

In January 2019, the City and the officers separately moved for summary judgment. (Docket Entry Nos. 100, 102). Flores responded to both motions and filed supporting exhibits, including Exhibit L, which was a compilation of 23 administrative reports by the Houston Police Department Internal Affairs Division. (*See* Docket Entry Nos. 112–14, 114-11, 115-10). The responses were identical and did not address the City's arguments for summary judgment. (*See* Docket Entry No. 112, 113). Because Flores did not file Exhibit L under seal as required under the parties' protective order, the court struck the exhibit but noted that "[t]here is no basis to believe that the analysis or outcome would change" if it were considered. (Docket Entry No. 129 at 17).

In March 2019, the court granted the City's summary judgment motion and granted in part and denied in part the officers' summary judgment motion, leaving only Harris as a defendant. (*Id.*). The court concluded that Flores had not offered or pointed to evidence showing a municipal

policy, practice, or custom that could make the City liable under § 1983 for the shooting.[2] (*Id.* at 45–62).

In June 2019, Flores moved under Federal Rules of Civil Procedure 54(b), 59(e), and 60(b)(6) for reconsideration of the court's March 2019 Memorandum and Order granting the City's summary judgment motion. (Docket Entry No. 150). Flores argues that new evidence shows that the court should have denied the motion. The City argues that the motion for reconsideration fails because Flores did not timely file it; has not offered or pointed to newly discovered summary judgment evidence showing genuine factual disputes material to the issue of municipal liability; and has shown neither manifest injustice nor extraordinary circumstances justifying reconsideration. (Docket Entry No. 155 at 7).

## II. The Legal Standard

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). Motions to reconsider that seek to amend a final judgment are treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), or motions for relief from judgment under Rule 60(b), depending on when the motion is filed. *Demahy v. Schwarz Pharm. Inc.*, No. 11–31073, 2012 WL 5261492, at *2 n.2 (5th Cir. Oct. 25, 2012) (citing *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). A motion for reconsideration is considered under Rule 59(e) if it is filed within 28 days of the court's ruling, and under Rule 60(b) if it is filed after that. *Demahy*, 2012 WL 5261492, at *2 n.2 (citing *Tex. A&M*, 338 F.3d at 400).

---

[2] The March 2019 Memorandum and Order also granted summary judgment to the City on state-law claims that Flores appeared to assert and on his claim for punitive or exemplary damages. (Docket Entry No. 129 at 62–65). Because Flores does not discuss these claims in his motion for reconsideration, the court does not consider them.

3

However, Rule 54(b) applies to motions to reconsider interlocutory orders that do not dispose of every claim or resolve the rights of all parties to the litigation. FED. R. CIV. P. 54(b); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). This motion is considered under Rule 54(b).

Under Rule 54(b), the court may "reconsider, rescind or modify an interlocutory order for a cause seen by [the court] to be sufficient." *Stoffels ex rel. SBC Telephone Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726 (5th Cir. 2012). In reviewing a Rule 54(b) motion, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc)). "To obtain relief under Rule 59(e), the movant must (1) show that its motion is necessary to correct a manifest error of law or fact, (2) present newly discovered or previously unavailable evidence, (3) show that its motion is necessary to prevent manifest injustice, or (4) show that its motion is justified by an intervening change in the controlling law." *Arceneaux v. State Farm Fire & Cas. Co.*, No. 07–7701, 2008 WL 2067044, at *1 (E.D. La. May 14, 2008).

Although Rule 54(b) motions to reconsider interlocutory orders are considered more leniently than motions filed under the more exacting Rule 59(e) standard, the Rule 59(e) factors offer guidance. *See Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002). Under Rule 59(e), a motion to reconsider may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the

4

judgment or order was entered. 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed.).

## III. Analysis

### A. The Timeliness of Flores's Motion

The City explains that the motion was filed 73 days after the March 2019 Memorandum and Order, which is more than the "28-days after the entry of judgment" allowed for motions for reconsideration under Rule 59(e). (Docket Entry No. 155 at 10 (citing FED. R. CIV. P. 59(e))). According to the City, the motion is untimely, even under Rule 60(b), because Flores's "motion for reconsideration is nothing more than his untimely response to the City's summary judgment" and "[h]e could have and should have presented his arguments" when the court was considering that motion. (*Id.*).

Flores's motion is properly considered under Federal Rule of Civil Procedure 54(b), which does not limit the time in which the court may revise any order. FED. R. CIV. P. 54(b). "'Interlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires.'" *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)). Because the March 2019 Memorandum and Order did not adjudicate "the claims or the rights and liabilities" of all the parties, it was an interlocutory order that may be amended under Rule 54(b). Flores's timing in moving for reconsideration is an insufficient basis to deny his motion.

### B. Flores's Request for Rulings on His Objections to the Defendants' Summary Judgment Evidence

Flores first asks the court to rule on his objections to evidence the defendants filed with their summary judgment motions. (Docket Entry No. 150 at 8). He asserts that "[t]here was no

5

ruling" on his objections, but he does not point to any arguments made before the court's March 2019 Memorandum and Order that raised these evidentiary objections for any rulings. (*Id.*). His response to the City's summary judgment motion was a copy of his response to Officer Harris's summary judgment motion, which did not include the objections listed in his motion for reconsideration. Instead, that response raised as its sole evidentiary issue whether the lack of footage from the La Estancia surveillance camera showed spoliation. (Docket Entry No. 113 at 15).

Federal Rule of Civil Procedure Rule 56(e) and the Federal Rules of Evidence govern the submission of evidence in a summary judgment motion. *See, e.g.*, *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002) (discussing the district court's application of Rule 56(e) and the rules of evidence on a summary judgment motion). Under Federal Rule of Civil Procedure 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Under Federal Rule of Evidence 602, a witness's testimony may not be considered unless it is based on personal knowledge. *See Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992). The rules governing hearsay also apply. *See* FED. R. CIV. P. 56(e); FED. R. EVID. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.").

Examining these objections for the first time, the court concludes that they are not a basis to reconsider the admissibility of the City's summary judgment evidence. Flores offers no arguments in support of his objections, instead labeling each exhibit with conclusory "hearsay" or "relevance." (Docket Entry No. 150 at 8); *see, e.g.*, *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 824

6

(E.D. La. 2017) ("It is not the Court's responsibility to comb through the record to determine the basis for Hoffman's cursory objections or to make arguments on his behalf. Accordingly, the Court denies Hoffman's objections to all of Bailey's exhibits at this time." (footnote omitted)); *Itani v. Viant, Inc.*, No. 4:10-CV-852-Y, 2012 WL 13019683, at *2 (N.D. Tex. Sept. 4, 2012) ("Concerning Itani's remaining objections to Aetna's evidence, which are raised in a laundry-list format with little or no explanation as to their grounds, the Court declines to ferret through the summary-judgment appendices and provide its own independent analysis as to each one.").

The court denies Flores's objections to the City's summary judgment evidence.

### C. The City's Objections to Flores's Evidence

#### 1. Flores's Supplement to Exhibit L: City of Houston Police Department Internal Affairs Reports

Flores has supplemented Exhibit L, the sample of Houston Police Department Internal Affairs investigative reports, with a table listing the use-of-force incidents. (Docket Entry No. 151). The table summarizes each incident and notes the outcome of the internal investigation, whether there was retraining, what off-duty activity the officer was doing, whether witnesses disputed the officer's account of the use of force, and whether the officer was the subject of a later use-of-force complaint. (*Id.*). The City objects to this supplement as "misleading because it does not give an accurate account of the administrative investigations listed in said exhibit." (Docket Entry No. 156 at 1). The City argues that because the exhibit presents only Flores's summary of the reports, not the actual reports, the court should either strike the exhibit or require Flores to offer the full investigative reports. (*Id.* (citing FED. R. EVID. 106)). The City also notes that Flores did not produce 14 of the 37 investigative reports related to the cases listed in the supplement with

either his response to the motion for summary judgment or his motion for reconsideration.[3] (*Id.* at 2). The City argues that this means that the parts of the supplement referring to those cases cannot be authenticated and that the City cannot determine if Flores violated the protective order limiting the use of the investigative reports. (*Id.*).

Federal Rule of Evidence 1006 permits summaries of "voluminous writings . . . that cannot be conveniently examined in court." FED. R. EVID. 1006. However, a summary is admissible under Rule 1006 only if the party makes the evidence available for examination, copying, or both. *Id.* The City argues that although Exhibit L, which filed in January 2019, provides the underlying reports for 23 of the 37 incidents summarized in the table, Flores did not share the underlying reports with the City or the court for 14 of the summarized incidents. (Docket Entry No. 156 at 2; *see* Docket Entry Nos. 114-11, 115-10, 151). Flores has not responded to that argument. (Docket Entry No. 161).

The City also argues that the court should strike the part of the table that states whether the officers were the subject of later use-of-force complaints, because Flores did not offer the underlying evidence supporting those conclusions. (Docket Entry No. 156 at 2).

While Flores has filed the underlying investigative reports for only 14 incidents summarized in his supplement to Exhibit L, the court denies the City's request to strike those entries and Flores's discussion of whether there were later use-of-force complaints. The City is in possession of the underlying reports as it produced the reports for Flores in discovery and the Houston Police Department, a department of the City, prepared those reports. As to the City's argument that Flores's summaries and notes about these reports are misleading, the court has

---

[3] These incidents are entries 1, 6, 9, 10, 11, 12, 13, 14, 26, 34, 35, 36, and 37 in the supplemental table. (*See* Docket Entry No. 151).

reviewed the underlying investigative reports available to it, and summaries of investigative reports not included in Exhibit L do not change the court's analysis of Flores's arguments.

### 2. Exhibits R and S: *Baker v. City of Houston* Order and *Releford v. City of Houston* Order

Flores attaches to his motion for reconsideration Exhibit R, a memorandum and order in *Baker v. City of Houston*, and Exhibit S, a memorandum and order in *Releford v. City of Houston*. (Docket Entry Nos. 150-1, 150-2). The City objects to these exhibits because the *Baker* and *Releford* cases "involve unsubstantiated, dissimilar incidents" that "do not prove the existence of a municipal policy, practice or custom" and do not show a pattern supporting an inference that the City is liable to Flores. (Docket Entry No. 156 at 8 (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Peterson v. City of Fort Worth*, 588 F.3d. 383, 851 (5th Cir. 2009); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005))). The City's arguments about the value of, or weight to be given to, these exhibits go to the merits of Flores's arguments about municipal liability, not the admissibility of the exhibits themselves. The court will consider the exhibits.

### 3. Exhibit T: Media Accounts of a Houston Police Department Raid

Flores's Exhibit T is a newspaper article about a January 2019 shooting. (Docket Entry No. 150-3). The City argues that Exhibit T is inadmissible hearsay and that the article "involves an unsubstantiated, dissimilar incident," making Exhibit T's probative value substantially outweighed by the risk of unfair prejudice to the City. (Docket Entry No. 156 at 8–9 (citing FED. R. EVID. 403)).

The City is correct. "Newspaper articles . . . are hearsay and therefore do not constitute competent summary judgment evidence." *Cano v. Bexar Cty.*, 280 F. App'x 404, 406 (5th Cir.

2008) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)).  The court does not consider Exhibit T in its analysis.

D. **Municipal Liability**

Flores argues that new evidence and Houston Police Department Internal Affairs Reports now filed under seal justify reconsideration of the court's March 2019 Memorandum and Order granting summary judgment to the City.  (Docket Entry No. 150 at 10).  He frames the motion for reconsideration around three issues: (1) whether the City is liable for Officer Harris shooting him in 2015; (2) whether the City is liable under § 1983 for ratifying Officer Harris's conduct because it failed to discipline Harris and other officers who used excessive force; and (3) whether the City violated his constitutional rights by "failing to adequately train, investigate, punish[,] and discipline its officers on the use of excessive force." (*Id.*).  The court considers each issue in turn.

1. **Whether Flores Has Provided Evidence Supporting Municipal Liability for Officer Harris's Use of Excessive Force**

Flores first argues that the City is liable for Officer Harris's conduct because it was the foreseeable consequence of the City "fail[ing] to adequately investigate, discipline, punish or train Harris" and "there is evidence that an official policy, practice or custom of the City was the moving force or direct cause" of the shooting.  (*Id.* at 13).

To hold the City liable for its officers' constitutional violations, Flores must show that (1) the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy"; (2) the custom or policy was approved or sanctioned by the City's final policymaker; (3) the final policymaker acted with deliberate indifference; and (4) the custom or policy was the "moving force" behind the violation.  *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc).  "Municipal liability cannot be sustained under a theory of *respondeat superior*.  '[T]he

unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (alteration in original) (citations omitted) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (internal quotation marks omitted). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169; *see also Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) ("Deliberate indifference to claims of such civil rights violations—tantamount to a custom or policy sufficient to support municipal liability under § 1983—may be inferred from a municipality's lack of appropriate response to repeated complaints of such violations.").

"[P]roof of a single instance of unconstitutional activity is [generally] not sufficient for § 1983 liability." *Valentine Found. v. Uphoff*, 211 F. App'x 276, 278 (5th Cir. 2006) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (proof of deliberate indifference "generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights'" (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001)); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) ("[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a

plaintiff to "demonstrate a pattern of violations"); *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 288 (5th Cir. 2002); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("proof of a single violent incident ordinarily is insufficient" for liability; the "plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured'" (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554–55 (5th Cir. 1989)).

Deliberate indifference in a failure-to-train case requires the plaintiff to "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *Snyder*, 142 F.3d at 799 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Notice of a pattern of similar violations is generally required. *See Roberts*, 397 F.3d at 294 (rejecting the plaintiffs' proffered pattern because it was at "an excessively high level of generality"); *see also Burge*, 336 F.3d at 371 (the evidence must be "sufficient to establish deliberate indifference or knowledge" that a constitutional violation "would be a highly likely consequence"); *cf. Brown*, 520 U.S. at 412 (a finding of supervisory liability for inadequate screening "depend[s] on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff"). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (internal quotation marks omitted).

The policymaker must have actual or constructive knowledge of the alleged policy, practice, or custom. *See Piotrowski*, 237 F.3d at 579 ("Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."); *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir.1984). The cases require prior acts that are fairly similar to the alleged violation at issue.

*See, e.g.*, *Snyder*, 142 F.3d at 798 (the "plaintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured." (internal quotation marks and citation omitted)).

"[A] 'handful' of instances do not constitute a pervasive custom or practice." *Garza v. Harris Cty.*, No. H-09-4058, 2011 WL 3925020, at *4 (S.D. Tex. Sept. 7, 2011) (citing *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002)); *Saenz v. Dallas Cty. Cmty. College Dist.*, No. 3:10-CV-742-O, 2011 WL 1935742, at *8 (N.D. Tex. May 16, 2011). The Fifth Circuit has characterized the "single incident exception" to the general rule requiring a pattern of violations as "a narrow one, and one that we have been reluctant to expand." *Burge*, 336 F.3d at 373 (citing *Pineda*, 291 F.3d at 334–35); *see also Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) ("We have consistently rejected application of the single incident exception and have noted that 'proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'" (quoting *Snyder*, 142 F.3d at 798)); *Conner v. Travis Cty.*, 209 F.3d 794, 797 (5th Cir. 2000).

In this case, the court granted the City's motion for summary judgment, finding that Flores had failed to show a pattern of excessive force. (Docket Entry No. 129 at 55). The court concluded that Flores had neither presented "the necessary context of the overall number of arrests, police encounters, or comparisons to other cities," nor explained "how the events he [identified] involving Houston Police Department officers using excessive force are sufficiently similar to each other and to Harris's actions on July 22, 2015, to show a pattern." (*Id.* at 52).

Flores argues that the court erred in granting summary judgment for the City because there are genuine factual disputes material to determining whether the City has an official custom that encourages off-duty officers to use deadly force. (Docket Entry No. 150 at 16). He points to 35 deadly force incidents involving off-duty officers in support. (*Id.*). In the Internal Affairs

13

Divisions investigations into these incidents, 34 were found "justified" and one "accidental." (*Id.*). According to Flores, these incidents show that the City has a pattern of not punishing off-duty officers for using deadly force, which allows "officers that have been investigated in the past [to] learn the ropes of an investigation and [become] even more savvy and confident that their actions would not be found unjustified." (*Id.* at 16–17). The City responds that Flores has not shown a pattern because he simply points to the investigative reports without drawing factual connections to the facts of this case. (Docket Entry No. 155 at 13).

The Internal Affairs Division reports Flores presents do not show genuine factual disputes material to determining whether the Houston Police Department had an unconstitutional pattern or practice that was the moving force behind shooting Flores. The Fifth Circuit has explained that "the plaintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured." *Cano*, 280 F. App'x. at 406 (quoting *Estate of Davis*, 406 F.3d at 383). Although Flores attaches to his motion for reconsideration a chart discussing the similarity of other Houston Police Department investigations into the use of force, neither that exhibit nor the other record evidence provides the court a basis for reconsideration. As discussed above, the court cannot consider the new incidents added to Exhibit L because they are not competent summary judgment evidence and many occurred after Flores's shooting in 2015. A "post-event failure to discipline [an officer] cannot supply the necessary linkage to establish a city policy." *Grandstaff v. City of Borger*, 779 F.2d 1129, 1132 (5th Cir. 1986))).

The record evidence and the motion for reconsideration also do not correct the lack of necessary context the court identified in its March 2019 Memorandum and Order. In *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002), the Fifth Circuit concluded that 11 instances of unconstitutional searches through warrantless entries were insufficient to establish "a fact issue on

the issue of pattern of conduct." *Id.* at 329. The court explained that the small number of incidents were drawn from 5,000 offense reports, making "the sample of alleged unconstitutional events . . . too small" and not enough to "support a pattern of illegality in one of the Nation's largest cities," Houston. *Id.*; *see also Peterson*, 588 F.3d at 851 (27 complaints in 4 years insufficient to show a pattern); s*ee also Saenz v. City of El Paso*, 637 F. App'x. 828, 832 (5th Cir. 2016) (21 prior incidents of police shootings over 19 years insufficient to show a pattern); *Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2012 WL 2191697, at *5 (W.D. Tex. June 14, 2012) (32 prior incidents of excessive deadly force over 15 years insufficient to show a pattern).

While Flores does attempt to draw comparisons to the other allegedly unconstitutional uses of force he identifies in Exhibit L's offense reports, he does not offer the necessary background on the number of offense reports from which these examples were culled. (*See* Docket Entry No. 151); *Peterson*, 588 F.3d at 851 ("For example, the record does not indicate the size of the Fort Worth Police Department or how many arrests were made by the department between 2002 and 2005. We have previously indicated that the size of a police department may be relevant to determining whether a series of incidents can be called a pattern."). The 37 incidents Flores identifies occurred over 20 years.[4] (Docket Entry No. 151). The court has no way to tell how many Houston Police Department use-of-force incidents were investigated during this time. (*Id.*). Flores alleges that 97% "of the 35 off-duty [Houston Police Department] officers" who were the subject of the investigative reports included in Exhibit L were found to have justifiably used deadly force, but he does not explain or add necessary context to this figure. (*Id.* at 11). For example, are there other investigative reports involving off-duty officers that were not included? How many other officers—whether on or off duty—were investigated, and how many of those incidents were

---

[4] Flores states later that the cases he lists are "from 2009 to 2015," but the summary includes an entry for a shooting in 1997. (*See* Docket Entry No. 151 at 5).

15

found justified? Are these 35 incidents the only incidents that involved facts similar to those alleged here?

The motion for reconsideration leaves the court to guess at these central questions because Flores fails to support his claims about the rates of the Houston Police Department officers' uses of force, or point to relevant comparators. Flores states that he submitted "all 35 cases from 2009 to 2015 found to be 'justified' uses of force," but he does not support that assertion with record evidence or explain how his sample of investigative reports in Exhibit L was chosen, how these reports should be understood within the context of the Houston Police Department's operations, or how many use-of-force incidents occurred in that 6-year period. (*Id.* at 23). His assertion that "more than 400 people [were] intentionally shot by [Houston Police Department] officers between 2004 and 2015" is similarly unsupported by either record evidence or an explanation of whether those 400 incidents have any factual similarities to Officer Harris's conduct here. Although Flores argues that "[t]he City's Internal Affairs Division found every intentional officer-involved shooting from 2009–2015 to be justified," he does not point to record evidence comparing those cases to his own. (Docket Entry No. 150 at 7).

Because Flores has not shown that there are genuine factual disputes material to determining whether the City had a policy, practice, or custom that was the moving force behind the shooting, the court will not reconsider its grant of summary judgment to the City on this issue.

### 2. Whether Flores Has Provided Evidence Supporting His Ratification Theory of Municipal Liability

Flores alternatively argues that the City "ratified each use of deadly force" through its failure to discipline Officers Harris, Mawhood, and the officers involved "in nearly every other case of use of deadly force." (Docket Entry No. 150 at 27). However, he appears to conflate

evidence showing pattern to establish a policy, practice, or custom with the evidence showing ratification.

Ratification concerns whether "the authorized policymakers approve[d] a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 127 (1988). The Fifth Circuit has limited ratification to "extreme factual situations." *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017); *Snyder*, 142 F.3d at 798. Flores argues that the City's failure to investigate and punish officers for other excessive force cases ratified Officer Harris's use of excessive force. (Docket Entry No. 50 at 27–28). He does not offer or point to record evidence that could support an inference that this case presents an extreme factual scenario as required to show that the City ratified Officer Harris's conduct. The court will not reconsider its grant of summary judgment to the City on this issue. Controlling law precludes finding that this case presents an extreme factual situation. *See Peterson*, 588 F.3d at 848 (even common and known use of excessive force within a police department is not enough for ratification, nor is a policymaker defending conduct that is later shown to be unlawful).

### 3. Whether the City is Liable for Failing to Train Officers

The court concluded in its March 2019 Memorandum and Order that Flores had not raised a genuine factual dispute material to determining whether the City is liable for failing to train or to supervise its officers. (Docket Entry No. 29 at 55–57). Flores argues that the court should reconsider granting the City summary judgment on this issue because he "can establish [the City's] liability . . . by showing that the City of Houston deliberately chose not to supervise, discipline, or train its off-duty (or on duty) officers despite being on notice that its inadequate . . . regime failed to prevent tortious conduct by its off-duty officers." (Docket Entry No. 150 at 17).

For a municipality to be liable for failure to train, the plaintiff must prove "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow*, 614 F.3d at 170. The Supreme Court has warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

A plaintiff relying on a failure-to-train theory must show a causal link between the failure to train and the constitutional violation and must show that the failure to train amounts to deliberate indifference. *Estate of Davis*, 406 F.3d at 382–84; *City of Canton*, 489 U.S. at 385. The Fifth Circuit found a single incident sufficed in *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), because the county failed to provide any training or supervision for a young, inexperienced officer with a clear prior record of recklessness. *Id.* at 463. In *Roberts*, the court noted the difference between a complete failure to train—as in *Brown*—and a failure to train in a limited area. *Roberts*, 397 F.3d at 295–96 (distinguishing *Brown*). Proof that an injury could have been prevented if the officer had received better or additional training cannot, without more, support liability. *See Pineda*, 291 F.3d at 333. Instead, the plaintiff must show that the "officers were so untrained as to be unaware" of constitutional limitations. *See id.*

In its March 2019 Memorandum and Order, the court considered in its summary judgment analysis the training records for both Harris and Mawhood. (Docket Entry No. 129 at 57 (citing Docket Entry Nos. 100-8, 100-9)). Those records show that each received 60 hours of training on the permissible use of force in 1997, and that Harris received additional training on the use-of-force options after shooting Flores. (Docket Entry No. 100-8 at 2; Docket Entry No. 100-9 at 2, 11). The court also considered Officer Mawhood's deposition testimony explaining the City's

18

use-of-force classroom and field training, (Docket Entry No. 129 at 57 (citing Docket Entry No. 115-6 at 53-56)), and the deposition testimony of Houston Police Lieutenant Bradley Moore about the training that officers receive when they join the force and on a continuing basis. (Docket Entry No. 129 at 57 (citing Docket Entry No. 115-7 at 4–8)).

Flores has not pointed to record evidence raising an inference that the Department's training was inadequate. As the court explained in its March 2019 Memorandum and Order, Flores has failed to identify or offer evidence that could show that the shooting was the "highly predictable consequence of a failure to train." *Estate of Davis*, 406 F.3d at 386. Flores has not provided or identified evidence that supports an inference that the City's training policies for its officers on the use of force were inadequate, or that the Department's training showed deliberate indifference to Flores's constitutional rights. As discussed above, the additional cases discussed in Flores's revised Exhibit L are inadmissible as summary judgment evidence, but, even if considered, they do not establish that the shooting was the result of any training deficiency. (*See* Docket Entry No. 151). The court will not reconsider its decision to grant summary judgment to the City on Flores's claim for deficient training on the use of force.

The court also declines to reconsider its decision to grant the City summary judgment on Flores's claims that the City is liable for failing to adequately investigate, supervise, and discipline its off-duty officers. Flores's allegations of failure to supervise is essentially a repackaging of his allegations that the City's failure to train adequately its officers was the moving force behind his shooting. *Cf. Roberts*, 397 F.3d at 292 (discussing failure to supervise and failure to train as a single issue). For the reasons discussed above, Flores has failed to show genuine factual disputes material to determining whether there was a failure of the City to train its officers, or that the failure was a moving force behind the 2015 shooting.

As to the alleged failure to discipline and investigate, a plaintiff must point to evidence that there was a "City policy of inadequate officer discipline" that was created or pursued "with deliberate indifference toward the constitutional rights of citizens." *Piotrowski*, 237 F.3d at 581–82. Proof of such a policy, custom, or practice, may be based on "a purely formalistic investigation in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory." *Id.* Flores has not offered or pointed to summary judgment evidence supporting his failure-to-discipline claim. The record evidence, including the internal affairs report, show that the City did investigate each use-of-force incident. (*See* Docket Entry Nos. 114-11, 115-10). The fact that none of the officers named in those reports was punished is alone insufficient to support the failure to discipline claim. *See, e.g.*, *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982), *overruled on other grounds by Int'l Woodworkers of Am., AFL–CIO and Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986); *Young v. Green*, No. CIV.A. H-11-1592, 2013 WL 775388, at *20 (S.D. Tex. Feb. 28, 2013)

The court will not reconsider its decision to grant summary judgment to the City on this issue.

## IV. Conclusion

The court finds no basis to reconsider its March 2019 Memorandum and Order granting summary judgment to the City of Houston. The court denies Flores's motion for reconsideration. (Docket Entry No. 150).

SIGNED on July 17, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge